Our next case is Hinsberg v. DVA, case number 22-1900. I have the honor of representing Dr. Hinsberg, and at the MSPB level of this case, the MSPB found that my client did indeed meet his initial burden that he is a whistleblower. So then the burden shifts to the agency to then put forth clear and convincing evidence that they did not take these five personnel actions against my client because of him being a whistleblower. The MSPB judge found that my client engaged in three different forms of protected activity that would protect him as a whistleblower, and those included his protected disclosures about his status as a neuropsychologist with the VA. He talked about the concerns of the standards that were being applied for analysis in how clinicians were performing their duties at the Columbia location for the VA. Do you agree that the agency doesn't have to produce evidence for each of the card factors? I think the most important and persuasive of the three card factors that the agency has a responsibility to show is the third, which is the comparator. I think that is the most pivotal one here where there is lacking none, and essentially the MSPB found that to be neutral. But I've cited in my briefing five different cases where Whitmore, Chambers, Miller, Russell, and Doyle all show that the agency has a responsibility to put forth that evidence. We do not have that burden, and we still were indicating in the record that that's a burden. Just to circle back then, just getting to answer my question, do you think the agency has to produce evidence for each of the factors? It sounds like you think for factor three they do. Are you saying for all three? Well, the first factor is the strength of the agency's evidence. So I would say definitely the first factor as well. The second is about the existence and strength of any motive. So I would say the first and the third factors are the most persuasive in terms of what the agency needs to put forth. But the second is about motive. So we have indeed showed that Dr. O'Mara and Dr. Haddock, the two decision makers, did indeed have retaliatory motives. So I think there is a little bit of hybrid there between those three factors because the motive aspect is still an intent. You know, we need to be able to show and have indeed already established that in the initial prima facie showing of reprisal. And so the MSPB did indeed agree with that. And so with the three car factors, I would say that then once the burden has shifted to the agency, all three factors must have evidence from the agency proffering otherwise. They have a burden of showing. So to answer your honor more directly, yes, the agency needs to produce evidence about all three car factors once that burden has shifted to them. They have that clear convincing burden. But I think there's kind of a sliding scale, I guess to some extent, in terms of the most obvious of how much evidence would need to be put forth from the agency. And prior case law from this court has indicated... Now you can say that Dr. Birch is a similarly situated employee. Within the record, Dr. Birch is described as in a non-clinical role as well. So both Dr. Birch and my client Dr. Ginsberg were serving as like part-time other roles. But ultimately the ones that issue here is their part-time services to the VA as researchers. And so when we look at, for instance, the clinical side of this prior case, that's based on conduct and performance being considered, the reasons given by the VA in terms of taking these five personnel actions about Dr. Ginsberg are solely based on his status. They essentially argue it's a matriculation, that because he loses his clinical status he can no longer be a researcher with the VA. And the only evidence that they cite to in the record is the IRB recommendations and the ORD program guide. I'd like to analyze both of those each because I think they're pivotal. The IRB, again, is a recommendation. So again, this goes to this third and second as well elements of CARB where it shows that there is the existence of a motive. So Dr. Haddock and Dr. Amora had to make decisions. They had to voluntarily choose to take these five personnel actions. And that they didn't take similar actions against Dr. Birch who was working on the exact same research program go to the very heart of the issue. But is Dr. Birch really similarly situated? He or she was never a clinician and never lost their clinical status due to misconduct. Isn't that who would be similarly situated, that type of person? No, Your Honor. And let me explain my rationale behind that. It's because the agency itself does not make that determination. And there's nothing in the program guide indicating a loss of clinical status. It's only, they're pointing to, is someone a clinical employee? That five-eighths argument that they've raised. And again, Dr. Birch and Dr. Ginsberg were both not in that status. Did the agency take the view that there are no similarly situated individuals?  Okay, but didn't they take that position? I think indirectly, yes, Your Honor. The board at least tells us they think that you did not dispute that assertion on this third car factor. Isn't that right? And that's very much a disputed part of the appeal. Sorry, show us where you disputed. You agree that the agency contended that there are no similarly situated individuals, right? To the extent it proffered no evidence otherwise of a comparator. So, again, I think the case law that I've cited to shows that where none has been identified, that that element, at least MSPB said, is neutral. We argue that it's not neutral based on. Well, show us where you made that argument below, where you said to the board in some fashion, we should get credit in this balance shifting or burden shifting from the agency's contention that there is nobody similarly situated. Because the board seems to think they said that and you said, okay, that's fine, we'll move on to the other factors. If you're telling me that's not what happened, I'd just like to see where that is. Yes, Your Honor. I'll use, when my colleague gets, I'll find a site just to utilize my time wisely. But I will look for that, Your Honor. Now, the Whitmore and Miller cases that you cited earlier on CAR Factor 3, they don't say that when the government takes the position that there's no similarly situated comparators, that that means that there must be some or that where they don't produce evidence that we're supposed to weigh that strongly in favor of, you know, the appellant, right? A very small presumption that CAR Factor 3 isn't neutral but only slightly favors here, in this case, Mr. Ginsburg, or Dr. Ginsburg, right? I think, Your Honor, with that in mind is that that's giving deference to the agency saying there is none. And again, I think the difference here is... I'm just looking at what our law says. Right. I want to know what the Whitmore case and the Miller case say. I don't remember them saying that you're supposed to look at that situation and presume the factor should be weighed in favor of the whistleblower. I don't see that. I just saw in those cases that it says it's a small increase in favor, weigh it a little bit in favor of Mr. Ginsburg. Dr. Ginsburg, am I correct in that? I mean, I just want to make sure I understand the case. The weight of the evidence. I'm not disagreeing with Your Honor's reading of Whitmore and Miller. What I'm saying is when you look at Whitmore and Miller and these other cases where the court has considered this element, it's... I think it is, to some extent, a case-by-case analysis. And in this situation, the agency did not provide any. But Dr. Ginsburg, who did not have the clear and convincing burden, is proffering Dr. Birch as someone who was working on the same... Like, he's the most obvious comparator. He's working on the same research program. And again, the status is the same. Conduct doesn't matter because that's not at all what's cited by the agency when it removes Dr. Ginsburg ultimately from all research roles through these five different personnel actions, where he is ceasing to be in any kind of employment with the VA based on his status. Do you agree that the standard of review here is substantial evidence? We're supposed to look and see whether the board's weighing of the factors and ultimate conclusion, whether it's supported by substantial evidence. In other words, whether it's a reasonable determination based on this factual record. Yes, Your Honor. That's the de novo review that... No, no. Substantial evidence review, not de novo review. Well, in terms of the substantial evidence, it would be one where you are looking at the MSPB's determination from a substantial evidence, from the three potential, if it was being arbitrary, capricious, in violation of the law or substantial evidence, we assert to the substantial evidence standard. Right. And so, you know, in this circumstance where there's recommendations from the IRB and statements supporting the action of the agency in the ORD, in the IRB, why isn't that, why isn't the board's determination here that there's clear and convincing evidence that the government would have made that same determination anyway? Why is that unreasonable? For example, Your Honor, I would cite to Appendix 11, 1176. That is Dr. Haddock's email. I think you can expressly see in the contents of her email therein that she acknowledges that her decisions related to this are voluntary in nature and that ultimately it would be something she, these personnel actions are something she could choose to do rather than ultimately... I hear what you're saying, that there is some discretion there. Even if there's some discretion from the recommendation of the IRB, that doesn't mean that the government wouldn't have taken the action anyway. Right? I mean, this case is a little different than other whistleblower cases in the sense that you do have, you know, some policy, written policy, and it supports the action that the VA took here, right? I would disagree, Your Honor, in the sense that the program guide is specifically about who would be the principal investigator. The program guide is sourced to in the record. That is not contemplated in these personnel actions that are taken. So I think if the program guide would be clear that he could not be the primary investigator, that is clear. But everything else that the VA did is discretionary and because he is a whistleblower. And when we look at this IRB, again, that's the other facet of what the agency sources to for their evidence to meet what they're starting as the clear and convincing standard, is that the IRB merely recommended that my client would, you know, be essentially amended to show that he is not in the clinical capacity, but they did not recommend these personnel actions that were discretionary in nature and taken by the two individuals who, as the MSPB already found, had motives related to a retaliatory or causal nature for my client's three protected activities, his OSC complaint, his board appeal in the first matter. Do you agree that each cross-example does not need to weigh in favor of the agency for us to approach this case? I'm sorry. Do you agree that each cross-factor does not need to weigh in favor of the agency for us to affirm in this case? I think all three weigh in favor of my client. That's why the first thing I analyzed, all three. No, but you didn't answer my question. I'm sorry, Your Honor. Do you agree that each cross-factor does not need to weigh in favor of the agency for us to affirm in this case? Well, I think the case law that I've cited to Whitmore, Chambers, Miller, Russell, and Doyle all analyze what the court standard has been in other cases. So I think I would just cite that being to following in the same footstep as it wouldn't be carving out new law. This would be consistent with what the court has already done. Could you answer that question with a yes or a no? Are you able to? Well, Your Honor, I would say that here, yes, all three show in favor of my client. The question is as a matter of law. You asked your own question. As a matter of law, do all three cross-factor? Is it okay if two cross-factors weigh in favor? I guess one factor weighs in favor of your client. Two factors weigh against your client. Can we still affirm? That's the question, I think. That is the question. Yes or no? And I believe yes, but I can double-check. I have Carr here, and in my brief amount of time, I can find the citation, and I'll confirm that in Carr. I don't want to misquote. Okay, it sounds like your answer is yes, and that's all. I was trying to get a yes or no, and I appreciate my colleague rephrasing the question. My recollection of Carr is yes, but I will refresh myself. I have it here in front of me, and I will do so. Thank you. Thank you, Ms. Poldy. Let's now hear from the government. Ms. Zanotti, did I say your name correctly? Yes, Your Honor. Whenever you're ready. Thank you. Good morning, Your Honors. This is the court. This case presents an attempt by Dr. Ginsburg to re-argue some of the barriers of his removal, which this court has already affirmed. In essence, what Dr. Ginsburg is requesting is that even though his removal from the clinical position was upheld by this court, there should be no downstream effects from that decision, and that the VA should have made every effort to continue to provide him research funding. He is wrong. Substantial evidence supports the board's decision that the agency clearly and convincingly proved that it would have taken the same personnel actions with regard to Dr. Ginsburg's research position, independent of his protected disclosure and activity. Regarding the first Carr factor, which is the strength of the agency— Yes, Your Honor. Case law is very clear that the agency is not required to produce evidence regarding to each specific Carr factor. In fact, we have Rickle v. Department of the Navy, which is a 2022 decision, and there, and I quote, it specifically states, Carr imposes no affirmative burden on the agency to produce evidence of each of the three factors. And the word produced there is italicized, so it's emphasized. Is Dr. Burge similarly situated here? No, Your Honor. Why not? Because Dr. Burge had a five days appointment, which was an appointment of at least 24 hours, 25 hours. It's undisputed that Dr. Ginsburg lacked that requirement, and that's reflected in Appendix 1146. He—and then Dr. Burge also has always been in a research position role, so he has never had his clinical privileges removed, which Dr. Ginsburg has. Additionally, Dr. Burge was paid—his salary was paid through the research funds, whereas Dr. Ginsburg's salary was paid by the facility. So those are at least three differences between—or three main differences between the two. So that's kind of the substantial evidence that would support the Board's determination that Dr. Burge was not, in fact, similarly situated. Yes, Your Honor. If we were to find that the Board erred in its analysis as to CARB Factor 3, could we still have followed? Erred in its analysis regarding the legal question or whether—or the substantial evidence. Let me keep it kind of general. Basically, what I'm wondering is, if there were error—and I'll kind of rephrase this, see if this will make it easier for you to answer. If there were error, would that error with respect to Factor 3 be considered, perhaps, harmless so that we could still get to and from? What's your position on that? Yes, Your Honor. So with regard to—with regard to whether Dr. Ginsburg was similarly situated, the Board did not take an overly narrow view of the record. Here, there were three declarations in the record, and they start on pages 198 through 1210 of the appendix, by Dr. Omora, Dr. Haddock, and Mr. Barman. And they each stated in their declarations that it was a cumulative effect of Dr. Ginsburg's clinical performance, his loss of privileges, his lack of a 5A's appointment with the agency, and his removal from the clinical position that essentially informed the agency's actions here. I still have one question. Are you aware of any of our case law where, if we found that the Board erred, let's say there's not substantial evidence to support the Board's finding on one of the CAR factors, that we went ahead and affirmed anyway? Because I don't know of any cases like that. Do you? I'm not aware of any. That's all I have, Your Honor. But here, maybe just to follow up on my colleagues, if we were to conclude there's not substantial evidence to treat CAR Factor III as neutral, and we think CAR Factor III could only be viewed as in favor of Dr. Ginsburg, can we affirm, or must we reverse, or what would we do at that point? No, Your Honor. So in Wrinkle, for example, the Court affirmed that the question before the Court is whether substantial evidence supports the Board's decision that the agency proved by clear and convincing evidence that it would have taken the same actions independent of protected disclosure activities. And the analysis of the CAR factors, it involves looking at the record and the aggregate to inform the Board's decision whether the agency met its burden of proof. So there's no quantum requirement, for instance. We're analyzing all of the factors, and if the record and the aggregate supports the Board's decision, then I think that's enough to affirm. Another question I have is the CAR factors aren't exclusive, right? As you're sitting there looking at the picture question of whether the government proved by clear and convincing evidence that it would have removed Dr. Ginsburg anyway, you know, there's other factors that could be considered, right, besides just CAR factors. Yes, Your Honor, and I believe the Court in Wrinkle did say that those factors are not exclusive. Do you think there's anything additional that the Board considered here? Anything? Like maybe the ORB and the IRB, and are those separate or part of the CAR factors in considering whether the government would have taken the action anyway, given that there's an independent Board, for example, that was recommending the action that the agency took? Yes, Your Honor, I think that becomes relevant particularly with regard to CAR factor one, which is the strength of the evidence. And then paragraph four, which is to dispute that the ORD program guide was not binding, the very first paragraph, the first paragraph in that guide states that these are the criteria to receive research support, and then paragraph four B, you know, refers to the employment requirement, the 25-hour requirement, as a requirement, specifically states the foregoing requirements. So it was binding, and the IRB is an institutional review board that's specifically charged with continuing oversight of the human subject research. It's important to remember that Dr. Ginsburg was removed from his position for egregious failures to maintain and document patient charts, patient records. That necessitated the director, Dr. Omura, who was the deciding official in the removal decision, which was affirmed by this Court despite Dr. Ginsburg's allegations of whistleblowing or retaliation. It necessitated Dr. Omura to make a complaint with the State Licensing Board. So all of these combined, Your Honor, show clearly that the agency was following its policies, it was following its protocol, and there was no motive to retaliate on either of the officials' parts. If the Court doesn't have any other questions. I have one more. So in the addendum, you try to introduce certain policies that appear not to be in the record. What's the basis on which we could look at them, and do you need us to look at them in order to prevail on this appeal? No, Your Honor. The addendum that I provided, that we provided, that was pursuant to Rule 28 of the Federal Rules, 28F of Appellate Procedure. But also that was merely to provide some background to the Court. On the record, there were a lot of references to IRB and ORD and co-investigator and investigator, but I don't think there was a particular document that specifically described what the roles of all of these boards are. So I think that was mainly to provide some background and assistance to the Court. You're not asking us to take judicial notice? They are part of the public record, Your Honor. So the Court could, if it wanted to. Thank you. For these reasons, and those described in our response brief, we respectfully request that the Court inform the Court's decisions. Thank you, Ms. Tanani. Ms. Colby, I'm going to give you another minute. Thank you. Thank you, Your Honor. First, I'd like to address Judge Cunningham's question. In order to answer that, I think I need to refer to three cases. Carr, Whitmore, and then also a recent 2023 McClure v. Department of Veterans Affairs. And therein, the Court talks about, in its totality, considering these different factors. And when I looked back at Carr itself, again, it uses the word factor, and it says and, and again, there's contemplated more. So I think the Court could overturn even just on one factor when I looked back at the specific verbiage of the Carr case itself. So to answer your question, it's just based on Carr, and then I'm looking at the recent McClure. So we could overturn, but I think the question was, can we affirm if we only think there's substantial evidence for two of the three factors in favor of the agency? In these cases that I look at, I think when the Court has found that a factor was inappropriately found by the MSPB not in support of the substantial evidence, that they would, in the past, this Court has overturned that based on even one factor being incorrectly applied by the MSPB. When you say overturned, do you mean vacated or demanded for the Board to consider in the first instance? Yes, Your Honor. The addendum, do you oppose us taking notice of it? Yes, I do, Your Honor, and I addressed that in the reply brief. It's at the very end of my reply brief, and just that there was like seven different items, I believe, and then each one I've identified which had no reference in the record, and I believe there were two that had at least some reference in the record. I think the Court obviously may analyze those differently based on things that were not at all before the MSPB, and ones that at least were referenced in some context. And then with regard to in the record whether Dr. Birch would have been a comparator or earlier in the record, two that I just found in quick reference was Appendix 873 in Dr. Ginsburg's prior counsel's correspondence with the agency, and then also I was looking at Appendix 1226, which is actually the MSPB's decision, and they articulate and describe Dr. Birch on this page as performing research in terms of, as I have described, the similar status, that the conduct is irrelevant. It's both their similar status as part-time researchers that are not clinical in nature. Are those the responses to our discussion earlier about whether you challenged the government's saying that there was nobody similarly situated at the board level? Yes, and in the review from the initial decision in the petition for review. That's in there as well, Your Honor. And is that at these two A sites that you just gave us, or is that a different site? The petition for review is a different one in the record. That was in addition to the petition for review. Okay, thank you. Do you want to cite a particular page in the petition for review? I'm not sure if the petition for review is even in our record. Thank you, Your Honor. I believe it is, Your Honor, but I'm not finding it at the moment. But you think it's in the petition for review? Yes, Your Honor. All right. Thank you, Ms. Colby. Thank you. We thank both counsel for your argument, and we will take the case under submission. Thank you.